ANATELY A. ARUTANOFF, Appellant,

*v.*

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, Appellees.

448 S.W.2d 408.

(*Nashville,* December Term, 1969.)

Opinion filed December 3, 1969.

536

EDWARD SISK and WILLIAM R. WILLIS, JR., of WILLIS, KNIGHT, CHAMBERS & BARR, Nashville, for appellant.

JOHN P. BRANHAM, Assistant Metropolitan Attorney, Nashville, for appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Appellant Anately A. Arutanoff was found guilty of violating Metropolitan Ordinance No. 67-255, sec. 16, in that he operated a motorcycle in Metropolitan Nashville without a protective helmet. He has appealed on the ground the ordinance is unconstitutional.

The State Statute and the Metropolitan Ordinance based thereon are as follows:

"T.C.A. sec. 59-934. (formerly sec. 59-944) *Crash helmet required for driver and passenger.*—The driver of a motorcycle or motor driven cycle and any passenger thereon shall be required to wear a crash helmet of a type approved by the commissioner of safety."

"Metropolitan Ordinance 67-255, sec. 16. *State Offenses Made Municipal Misdemeanors.* The State offenses cited under Title 59, Tennessee Code Annotated, and which are not specifically made a violation of any ordinance of the Metropolitan Government are hereby declared to be municipal misdemeanors, the definition of such offenses to be the same as those contained in the State statutes. Provided, however, that this section shall not apply to any offenses which are made exclusively a violation of State Law."

■ The contention the ordinance and the statute are unconstitutional rests on four propositions: (1) That the statute and ordinance are invalid attempts to exercise the State police power, because the requirement that motorcycle operators wear helmets bears no reasonable relationship to the safety of the public. (2) That the statute is so vague as not to meet the requirements of the Due Process Clause of the Fourteenth Amendment and the Law of the Land Section of the Tennessee Constitution, Article 1, Section 8, in that no standard is set for

the helmet to be worn, except that adopted by the State Commissioner of Safety. (3) That the statute and ordinance in requiring appellant to protect himself when the safety of others is not affected is an unconstitutional invasion of privacy in violation of the Ninth and Fourteenth Amendments. (4) That the statute and ordinance, in regulating apparel of motorcycle operators only, makes an unreasonable classification in violation of the Equal Protection Clause of the Fourteenth Amendment and Article 11, sec. 8 of the Tennessee Constitution.

We have considered these contentions and find them to be without merit.

The nature of police power and the role of the courts in case of its application by the legislature is discussed in *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A. 1916F, 177, as follows:

"The police power is a necessary one, inhering in every sovereignty, for the preservation of the public safety, the public health, and the public morals. It is of vast and undefined extent, expanding and enlarging in the multiplicity of its activities as exigencies demanding its service arise in the development of our complex civilization. It is a function of government solely within the domain of the Legislature to declare when this power shall be brought into operation, for the protection or advancement of the public welfare. It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is

contrary to natural justice and equity. These are considerations solely for the Legislature. In determining whether such act is reasonable, the courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the state or federal Constitution." 125 Tenn. 589-590, 145 S.W. 188.

Appellant's argument on his first proposition runs along this line: The police power derives from the maxim sic utere tuo alienum non laedas,[1] the true meaning of which has come to be accepted as "So use your own property as not to injure the rights of another." *Jeffries v. Williams,* 5 Exch. 797. That, since riding without a helmet will hurt no one except the motorcycle operator, the "rights of another" are not involved. The rights of another not being involved, the statute has no reasonable relationship to the public safety.

This argument is predicated on an erroneous premise. The police power is not derived alone from the maxim mentioned. In the particular regard involved in this case it is derived from the maxim, salus populi suprema lex.[2]

The first maxim justifies the use of police power in relation to an owner's property rights. The latter maxim concerns among other things limitation of personal rights, such as conduct. Concerning this maxim it has

---

[1] Enjoy your own property in such a manner as not to injure that of another person.

[2] "Regard for the public welfare is the highest law."

been written, "From the principle under consideration, and from the very nature of the social compact on which municipal law is theoretically founded, and under which every man, when he enters society, gives up part of his natural freedom, result those laws which, in certain cases, authorize the infliction of penalties, the deprivation of liberty, and even the destruction of life. * * *" Broom's Legal Maxims, 8th Ed., H. Chitty, p. 7.

The police power being based on the Salus Populi maxim, as well as the Sic Utere maxim, this power may be exercised by the enactment of prohibitory or restrictive measures directed to the end of fostering the public welfare by securing the safety of an individual as a class member. And when a law is enacted to secure the safety of the members of a class, the test of constitutionality is not limited to the question whether the conduct of a member of the class will probably result in harm to others outside the class, the test includes, whether there is danger to the safety and well-being of the class members by the practice sought to be regulated, and whether the regulation is reasonably designed to guard against this danger.

The validity of this statement is recognized in *State ex rel. Colvin v. Lombardi,* R.I., 241 A.2d 625. Although that case was decided primarily on the proposition that exposure of the motorcyclist to road hazards could reasonably be expected to increase the danger of operating other motor vehicles on the highways, that court did say:

"* * * we are not persuaded that the legislature is powerless to prohibit individuals from pursuing a course of conduct which could conceivably result in their becoming public charges."

The correctness of this view is also recognized in cases to be cited.

Since the police power of this state is at least co-extensive with that of any other state of the union, being limited here by Article 1, Section 8, of the Constitution of Tennessee, which has been said to be equivalent in effect to the Due Process Clause of the Fourteenth Amendment, *Motlow v. State,* supra, the holdings of the courts of other states are particularly persuasive, and we find that in all of the states where the question of the constitutionality of such regulations has come up, only two states hold for unconstitutionality. Those are Illinois and Michigan.[3] On the other hand, similar statutes have been held to be constitutional by the Louisiana Supreme Court, the Massachusetts Supreme Court, the North Carolina Supreme Court, the North Dakota Supreme Court, the Rhode Island Supreme Court, and the Wisconsin Supreme Court.[4]

These cases sustain regulations like that here involved on the ground the regulations are designed to secure both the safety of the motorcyclist as a class and the safety of the public generally. With respect to the safety of the public generally, the approving cases recognize the pos-

---

[3] People v. Fries, 42 Ill.2d 446, 250 N.E. 2d 149 (1969) American Motorcycle Assn. v. Davids, 11 Mich.App. 351, 158 N.W.2d 72 (1968).

[4] Everhardt v. City of New Orleans, 217 So.2d 400 (La1969); Commonwealth v. Howie, 238 N.E.2d 373 (Mass.), cert. denied, 393 U.S. 999, 89 S.Ct. 485, 21 L.Ed.2d 464 (1968); State v. Anderson, 3 N.C.App. 124, 164 S.E.2d 48 (1968); State v. Odegaard, 165 N.W.2d 677 (N.D.1969); State ex rel. Colvin v. Lombardi, 241 A.2d 625 (R.I.1968); Bisenius v. Karns, 165 N.W.2d 377 (Wis. 1969). A like result was reached by intermediate appellate courts in five other states. Connecticut v. Burzycki, 37 Law Week 2448 (Cir.Ct.App.Div.), cert. denied, 252 A.2d 312 (Conn.1969); State v. Krammes, 105 N.J.Super. 345, 252 A.2d 223 (Super.Ct.App.Div.1969) (per curiam); People v. Carmichael, 56 Misc.2d 388, 288 N.Y.S.2d 931 (Genesee Co.Ct.1968); State v. Craig, 19 Ohio App.2d 29, 249 N.E.2d 75 (1969); Ex Parte Smith, 441 S.W.2d 544 (Tex.Ct.Crim.App.1969).

sibility of loss of control of the motorcycle to the harm of the motoring public, because of the unprotected and thus unsafe condition of the motorcyclist. We also recognize this possibility.

We are satisfied the conclusion reached by the majority is the correct one, so we hold the statute is valid on the grounds that it is a proper exercise of the police power in behalf of the safety of the motorcyclist as a class, and the safety of the motoring public generally.

As to the contention the statute is unconstitutional for vagueness, we agree with those courts where the same contention has been overruled. *State v. Lombardi,* supra; *People v. Carmichael,* supra. The statute requires the wearing of a "crash helmet of a type approved by the commissioner of safety". The argument that this leaves the Commissioner at liberty to adopt any sort of headgear he might choose is denied by the statute which requires that it be a "crash helmet". This means that it must be a headgear designed to increase materially the safety factor in favor of the motorcyclist's head in case of a crash. This is so plain and simple as not to require any elaboration. While it might have been possible for the legislature to describe in detail the particular specifications of a helmet which would likely protect a motorist, it certainly was not required to do this. The description given is adequate notice of the legislative intention, and all that remains is for the administrator to carry out this intention. The real test would be whether the Commissioner has done this, but there is no contention he has not.

The contention that the statute and ordinance unconstitutionally invade appellant's privacy in violation of the Ninth and Fourteenth Amendments is overruled, be-

cause the regulated right is not one exercised in private where it cannot affect the public. Contrarily, the conduct regulated occurs in a public arena and as found by this Court and most others is of such a nature as to affect the safety of the numerous motorcyclists and the safety of the public generally. Under these circumstances the right of privacy argument is unusually sleeveless.

What we have already said is a sufficient basis for striking down the contention the statute is void as unreasonable classification in violation of the Equal Protection Clause and Article 11, Section 8, of the Tennessee Constitution. The very nature of the motorcycle as a vehicle for operation on public highways, with the body of the operator exposed to every conceivable road hazard which might befall one in that condition is certainly a sufficient reason for the legislature to classify such operators and enact regulations to protect them, and the public.

It is settled law that citizens may be classified under Article 1, Section 8 of the Tennessee Constitution when the object is to subject them to the burden of certain disabilities and duties or obligations not upon the community at large, subject to the limitation that the statutory classification must be natural and reasonable, and not arbitrary. *Stratton Claimants v. Morris,* 89 Tenn. 497, 15 S.W. 87, 12 L.R.A. 70 (1891), *Breyer v. State,* 102 Tenn. 103, 50 S.W. 769 (1899) ; *Motlow v. State,* 125 Tenn. 547, 145 S.W.2d 177, L.R.A., 1916F, 177 (1911); *Nance v. O. K. Houk Piano Co.,* 128 Tenn. 1, 155 S.W. 1172 (1913).

In *State v. McKay,* 137 Tenn. 280, 193 S.W. 99 (1916), this Court held that with the legislature rests the determination of the reasonableness of regulations under the

police power, and a court will not examine the question de novo and overrule such judgment by substituting its own, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to a mere arbitrary usurpation of power, or is unmistakably and palpably in excess of the legislative power, or is arbitrary "beyond possible justice" bringing the case within "the rare class" in which such legislation is declared void.

And in *Darnell v. Shapard,* 156 Tenn. 544, 3 S.W.2d 661 (1928), it was declared if any possible reason can be given to justify the classification made in an act involving the police power of the state it will be upheld and deemed reasonable.

Finally, on this subject, we refer again to *Motlow v. State,* supra, where it was said that when the police power classification is called in question as in conflict with the State Constitution, Article 1, Section 8, and Article 11, Section 8, and the Federal Constitution, Amendment 14, Section 1, any state of facts that can be reasonably conceived that would sustain the legislation will be assumed to have existed when the law was enacted; and one assailing the classification in such law must bear the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

The statute and ordinance meet these tests and are constitutional.

The assignments of error are overruled and the judgment of the trial court is affirmed.

DYER, CHIEF JUSTICE, and CHATTIN and CRESON, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.