# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JULY SESSION, 1998

FILED

October 23, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9709-CR-00415 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | PUTNAM COUNTY |
| VS. | ) | |
| | ) | HON. JOHN TURNBULL |
| GARY VAUGHN, et al., | ) | JUDGE |
| | ) | |
| Appellants. | ) | (Direct Appeal) |

FOR THE APPELLANT:

JOHN E. HERBISON
2016 Eighth Avenue South
Nashville, TN 37204

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Senior Counsel
425 Fifth Avenue North
Nashville, TN 37243

BILL GIBSON
District Attorney General

LILLIE ANN SELLS
Assistant District Attorney
145 South Jefferson Avenue
Cookeville, TN 38501

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellants, Gary M. Vaughn, Harry D. Stewart, Jo Ann Scarbrough, Kenneth L. Reagan, William M. Ransom, Julie C. Hileman, Harold H. Hileman, Geoffrey Mark Greely, Roy Howard Elkins, Kenneth D. Dyer, Larry K. Dunn and Robert J. Cunningham were convicted by a Putnam County jury of violation of Tenn. Code Ann. § 55-9-302, the "motorcycle helmet law." Each appellant received a fine of $5 as his or her sentence. On appeal, appellants claim that Tenn. Code Ann. § 55-9-302 is unconstitutional as it (1) interferes with their constitutionally protected privacy right, and (2) restricts their freedom of expression under the First Amendment to the United States Constitution, and Article I, § 19 of the Tennessee Constitution. Ten (10) of the appellants also challenge the sufficiency of the convicting evidence. After a thorough review of the record before this Court, we find no error and affirm the judgment of the trial court.

## FACTS

On July 19, 1996, Officer Rick Smith of the Putnam County Sheriff's Office was assigned to escort the procession for the funeral of Horton Swift. The decedent was formerly a member of the motorcycle organization, Concerned Motorcyclists of Tennessee, American Bikers Association Toward Education (CMT/ABATE), and many members of the organization attended his funeral.

Shortly after Officer Smith arrived at the funeral home, he was approached by Debbie Daniels, who asked permission for the cyclists to ride in the procession without their helmets. Officer Smith informed Daniels that he did not have the

authority to grant such permission, and if the cyclists chose to ride their motorcycles without a helmet, they would be violating the law. A short time later, appellant Gary Vaughn, along with approximately eight (8) other people, approached Officer Smith with a similar request. Once again, Smith denied permission. Officer Smith subsequently observed various members of the organization gathering helmets and placing them in a vehicle. Realizing that he could not control the impending situation, Smith notified his dispatcher that he was leaving the funeral home and would not be escorting the procession.

Officer Kenneth Bean of the Jackson County Sheriff's Department was a friend of the decedent and volunteered to assist in escorting the funeral procession. Officer Smith notified Bean that he was leaving the funeral home, and Bean decided that he would lead the procession alone.

Meanwhile, the Tennessee Highway Patrol had set up an "enforcement" roadblock on Route 135 North, where the funeral procession was scheduled to pass through. The patrolmen assigned to the roadblock were unaware that the procession would be traveling through the roadblock area, and Officer Bean had no knowledge of the scheduled roadblock.

Troopers David Bush and Milburn Rogers observed Officer Bean approaching, followed by approximately 50 to 60 motorcycles. Only four (4) to eight (8) of the cyclists were wearing helmets. The patrolmen diverted the procession into the parking lot of the Smyrna Church of Christ and began issuing citations.[1] Due to the excessive number of cyclists, additional officers were called in to assist.

---

[1] Apparently, the hearse was not traveling with the "procession," but was traveling approximately thirty (30) minutes behind the motorcycles. Eventually the hearse arrived, and Officer Bean was allowed to escort the hearse through the roadblock to the burial site.

In issuing the citations, each officer requested the cyclist's driver's license and registration, compared the individual with his or her driver's license picture, verified that the information on the license and registration was correct, and obtained the cyclist's signature on the citation. While many of the cyclists voluntarily requested the citation, each officer verified that a cyclist was not wearing a helmet before issuing a citation. The officers did not issue citations to anyone who claimed that he was wearing a helmet in the procession. Because the helmets had been placed in a vehicle which was traveling several minutes behind the procession, the officers could further determine whether an individual was riding without a helmet by observing whether the individual had a helmet in his or her possession.

Prior to trial, appellants filed a motion to dismiss their indictments on the basis that the motorcycle helmet statute is unconstitutional.[2] At the hearing on the motion to dismiss, Vaughn testified that he and his cohorts wanted to ride in the procession without their helmets as a sign of respect for the deceased. Upon the trial court's denial of appellants' motion, appellants' indictments were consolidated for trial.

At trial, appellants Elkins, Vaughn, Cunningham and Harold Hileman were identified as riding in the procession without a helmet. Although the officers were not able to specifically identify the other appellants at trial, they testified that they verified each individual's identity while issuing the citation by a comparison of the individual and his or her respective driver's license.

---

[2] Tenn. Code Ann. § 55-9-302(a) provides:

The driver of a motorcycle, motorized bicycle as defined in chapter 8 of this title, or motor-driven cycle and any passenger thereon shall be required to wear a crash helmet of a type approved by the commissioner of safety.

-4-

The jury found the appellants guilty of violating Tenn. Code Ann. § 55-9-302. From their convictions, appellants bring this appeal as of right.

## CONSTITUTIONALITY OF TENN. CODE ANN. § 55-9-302

In their first issue, appellants claim that Tenn. Code Ann. § 55-9-302 is unconstitutional in two respects. Appellants firstly assert that the statute is unconstitutional on its face because it infringes on an individual's right to privacy grounded in the federal and state constitutions' guarantees of personal liberty. Secondly, because appellants refused to wear their helmets as an expression of respect for the deceased, they contend that the statute is unconstitutional as it restricts their freedom of expression under the First Amendment to the United States Constitution and Article I, § 19 of the Tennessee Constitution. We will consider both of these arguments in turn.

### A. Right to Privacy

Appellants argue that Tenn. Code Ann. § 55-9-302 encroaches upon their "fundamental right to be left alone *vis-à-vis* the State." They insist that the decision to wear a safety helmet should be a personal one, and "paternalistic legislation" such as the subject statute constitutes an "unwarranted governmental intrusion" into citizens' lives.

The right to privacy is a fundamental one, which is embraced in the notions of personal liberty guaranteed by both federal and state constitutions. *See* Griswold v. Connecticut, 381 U.S. 479, 484-86, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); Davis v. Davis, 842 S.W.2d 588, 598 (Tenn. 1992). "[T]he concept of liberty protects those personal rights that are fundamental, and is not confined to the specific terms of the Bill of Rights." Griswold v. Connecticut, 381 U.S. at

-5-

486, 85 S.Ct. at 1683 (Goldberg, J., concurring). Under the Tennessee Constitution, the fundamental right to privacy has been upheld in circumstances involving parenting, *see* Simmons v. Simmons, 900 S.W.2d 682, 683 (Tenn. 1995); In re Adoption of Female Child, 896 S.W.2d 546, 547-48 (Tenn. 1995); Nale v. Robertson, 871 S.W.2d 674, 678 (Tenn. 1994); Hawk v. Hawk, 855 S.W.2d 573, 577-78 (Tenn. 1993), procreation, *see* Davis v. Davis, 842 S.W.2d at 600, and consensual, noncommercial sexual activity. *See* Campbell v. Sundquist, 926 S.W.2d 250, 262 (Tenn. App. 1996).

In Arutanoff v. Metropolitan Gov't, 448 S.W.2d 408 (Tenn. 1969), the Supreme Court was presented with an identical issue, i.e., the constitutionality of the then-existing motorcycle helmet statute. The Court upheld the statute, finding the regulatory measure aimed at promoting public safety to be a constitutionally valid exercise of the state's police power. Id. at 411-12. The Court further rejected the defendant's contention that the statute violated his right to privacy under the United States Constitution on the basis that the "the conduct regulated occurs in a public arena and . . . is of such a nature as to affect the safety of the numerous motorcyclists and the safety of the public generally." Id. at 412.

While appellants acknowledge that the holding in Arutanoff is unfavorable to their position, they argue that Arutanoff was decided under the federal constitution, and the right to privacy under our state constitution was first recognized many years after that decision. *See* Davis v. Davis, 842 S.W.2d at 599-600. Further, because the right to privacy under state law is much broader than that under federal law, they maintain that the ruling in Arutanoff is inconsequential. We disagree.

Appellants are correct in their assertion that the right to privacy under the Tennessee Constitution is more expansive than the right to privacy under the United States Constitution. Campbell v. Sundquist, 926 S.W.2d at 261; *see also* Davis v. Davis, 842 S.W.2d at 600. However, the evolution of privacy law transpired out of "the need to protect individuals from unwarranted governmental intrusion into matters . . . involving intimate questions of personal and family concern." Davis, 842 S.W.2d at 600 (emphasis added). Indeed, although Tennessee privacy law is more extensive than federal privacy law, "both bodies of law have drawn distinctions between actions which are committed in the privacy of the home and those committed in public." Campbell v. Sundquist, 926 S.W.2d at 262.

Appellants recognize that a public roadway is the "quintessential public forum." The decision whether to wear protective headgear while operating a motorcycle on a public roadway is in no way analogous to decisions involving parenting, procreation or consensual, noncommercial sexual activity. Appellants have cited no Tennessee authority which would extend a privacy right to conduct occurring within the public domain, nor is this Court aware of any. We, therefore, agree with the Court in Arutanoff that the statute at issue does not fall within the rubric of privacy law. Furthermore, protecting the safety of its citizens is within the state's police power, and the regulation at issue is rationally related to that state interest. *See* Arutanoff, 448 S.W.2d at 411-12; State v. Sowder, 826 S.W.2d 924, 927 (Tenn. Crim. App. 1991).

This issue is without merit.

### B. Freedom of Speech

Appellants also contend that Tenn. Code Ann. § 55-9-302 is unconstitutional in its application in that they declined to wear helmets in the

procession as a sign of respect for the deceased. Therefore, they urge that the statute impermissibly infringes on their constitutionally guaranteed freedom of expression.

The First Amendment is implicated when a statute regulates conduct which has the incidental effect of burdening expression. Arcara v. Cloud Books, Inc., 478 U.S. 697, 702, 106 S.Ct. 3172, 3175, 92 L.Ed.2d 568 (1986). However, not all conduct can be considered "speech" under the First Amendment simply because the person engaging in the conduct "intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). Appellants claim that their refusal to wear helmets in the funeral procession as a show of respect for the deceased was communicative conduct, and the state does not contest this assertion. We will, therefore, assume for the purposes of this appeal that appellants' conduct was sufficiently expressive to implicate constitutional principles of free speech. *See generally* Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

Even assuming that refusing to wear a helmet as a symbol of respect constituted "speech" under the First Amendment, appellants are not necessarily entitled to relief. The United States Supreme Court has held:

> when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. . . a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

United States v. O'Brien, 391 U.S. at 376, 88 S.Ct. at 1678-79.

-8-

Applying the four-part O'Brien test to the present facts, it is clear that the subject regulation is within the state's police power to protect the safety of its citizens. Gaskin v. State, 490 S.W.2d 521, 525 (Tenn. 1973); Arutanoff, 448 S.W.2d at 411-12. Furthermore, the statute serves the important governmental interest of protecting the safety of motorcyclists as a class, as well as other motorists on the public roadways. Arutanoff, 448 S.W.2d at 411-12.

Moreover, the state interest of protecting the safety of its citizens is unrelated to the suppression of free speech. Certainly, it is beyond dispute that the statute requiring helmets is content-neutral, as it has no relation to speech or other forms of expressive conduct, nor does it seek to suppress expression as its purpose.

Finally, the incidental restriction on appellants' freedom of expression is no greater than necessary to the furtherance of the state interest. "[A]n incidental burden on speech is no greater than is essential, and therefore is permissible under O'Brien, so long as the neutral regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985). The state interest of protecting the safety of motorcyclists on public roadways would indeed be less effective without a regulation requiring the cyclists to wear protective headgear.[3]

In that all four elements of O'Brien have been satisfied, we conclude that appellants' rights to free expression were not violated by their convictions under

---

[3]The General Assembly of Tennessee has made a legislative determination that motorcycle helmet laws significantly promote public roadway safety. Since we have concluded that this determination does not implicate constitutionally protected privacy or free speech concerns, this determination was the prerogative of the legislature. Any argument regarding the efficacy of helmet laws must therefore be addressed to the General Assembly.

Tenn. Code Ann. § 55-9-302.[4] *See also* <u>Clark v. Community for Creative Non-Violence</u>, 104 S.Ct. 3065, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

This issue has no merit.

## SUFFICIENCY OF THE EVIDENCE

In their final issue, ten (10) of the appellants assert that the evidence was insufficient for a rational trier of fact to find them guilty beyond a reasonable doubt. Primarily, they argue that the state did not present sufficient evidence of identity at trial. Appellants Harold Hileman and Cunningham concede that the evidence is sufficient to support their convictions.

When an appellant challenges the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. <u>State v. Bigbee</u>, 885 S.W.2d 797, 803 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. <u>Bigbee</u>, 885 S.W.2d at 803; <u>Harris</u>, 839 S.W.2d at 75. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. <u>State v. Brewer</u>, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the

---

[4] Our Supreme Court has held that, in certain contexts, Article I, § 19 of the Tennessee Constitution is "coextensive with the scope of the First Amendment to the U.S. Constitution." <u>Davis-Kidd Booksellers, Inc. v. McWherter</u>, 866 S.W.2d 520, 525 (Tenn. 1993) (obscenity).

appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

The appellants argue that the evidence presented at trial was insufficient to prove that they were riding their motorcycles without helmets. At trial, there was testimony that, when issuing the citations, each officer requested the cyclist's driver's license and registration, compared the individual with his or her driver's license picture, verified that the information on the license and registration was correct, and obtained the cyclist's signature on the citation. The officers verified that each cyclist was not wearing a helmet before issuing a citation and did not issue a citation to anyone who claimed that he was wearing a helmet in the procession. The officers determined whether an individual was riding without a helmet by observing whether the individual had a helmet in his or her possession. Additionally, the state introduced court documents which included appellants' signatures, and the jury was able to compare the signatures on the court documents to the signatures on the citations.

The identity of the appellants was a question of fact for the jury. State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). The jury could reasonably infer from the evidence that appellants were riding their motorcycles without a helmet. This Court is not at liberty to reevaluate that assessment.

This issue is without merit.

## **CONCLUSION**

We hold that Tenn. Code Ann. § 55-9-302 does not violate appellants' rights to privacy and freedom of expression protected under the federal and state constitutions. Moreover, we conclude that the evidence is sufficient to sustain appellants' convictions for violating the statute. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
DAVID G. HAYES, JUDGE