IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2001

**STATE OF TENNESSEE v. DONEY  D. MILES**

**Direct Appeal from the Criminal Court for Shelby County**
**No.  99-01725     Chris Craft, Judge**

_____

**No. W2000-02587-CCA-R3-CD - Filed September 14, 2001**

_____

The defendant appeals his conviction for aggravated robbery and sentence of eight years and six months, arguing: (1) there was insufficient evidence to support his conviction; (2) the trial court erred in allowing hearsay into evidence under the excited utterance exception; (3) the trial court erroneously failed to charge the jury on lesser-included offenses; and (4) his sentence is excessive. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Michael E. Scholl, Memphis, Tennessee, for the appellant, Doney D. Miles.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and David N. Pritchard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 23, 1999, at approximately 8:00 p.m., teenager Jarome Ladd was alone in his family's business, an arcade.  A man whom Ladd recognized as "Disco," a frequent customer, exited a vehicle outside the arcade.  Disco entered, displayed a gun, and stated, "You know what time it is." As Ladd reached for the cash box, Disco struck him in the head with the gun, knocking his chair over, and grabbed the money, totaling $500 to $600.  At trial, Ladd identified the defendant as Disco. Ladd testified the defendant had been in the arcade "maybe ten to fifteen times" in the two to three months prior to the robbery.

Ladd testified that his uncle, the manager of the arcade, returned to the arcade and telephoned Ladd's mother. His mother returned to the arcade, having been gone only ten minutes. Ladd testified that the police arrived five to six minutes after they were called.

Regina Trezevant, Jarome Ladd's mother, testified that on the evening of the robbery she had left her son and her brother at the arcade while she went to her mother's home. She stated she "wasn't gone a good ten minutes" when she returned to find her son "very upset," "emotional," and "real hostile." She observed an injury to his head. Trezevant testified her son said he had been hit in the head and robbed and identified his assailant as "Disco." Trezevant also noticed that coins were "thrown everywhere;" the desk drawer was pulled out; and the chair was turned over in the floor. She further testified she called the police, and they arrived within thirty minutes.

Memphis Police Officer Jason Parish testified he was dispatched to the arcade following the report of the robbery. Although the police report stated that officers responded to the robbery at 8:40 p.m., Officer Parish stated 8:40 p.m. could have been the time the department received the call or the time when he arrived at the scene. He further testified that he arrived at the arcade within five minutes of the call. When he entered the arcade, he noticed coins and the empty cashbox on the floor, along with an overturned chair. He testified that Ladd was upset and stated he had been robbed and struck in the head. The officer observed a knot on the right side of Ladd's head.

The defendant testified that on the evening of the robbery he shopped with a friend at the Mall of Memphis. He stated they arrived at the mall at approximately 8:00 p.m. and browsed until he made two purchases between 8:48 and 9:05 p.m. The defense produced copies of the alleged cash receipts for these purchases as well as the items he purchased, a shirt and pair of shoes. The defendant denied any involvement in the robbery but admitted that he had been in the arcade several times and was acquainted with Jarome Ladd. According to Ladd's testimony during the state's proof, one could drive from the arcade to the mall in twenty minutes.

Kiteme Gandy testified he went to the mall with the defendant sometime in 1999. He identified the shirt and shoes entered into evidence by the defense as the items purchased by the defendant during their trip to the mall.

Based upon this evidence, the jury convicted the defendant of aggravated robbery.


## I. Sufficiency of the Evidence

The defendant alleges there was insufficient evidence presented at trial to support his conviction. He argues the proof presented in support of his alibi defense was stronger than the proof submitted by the state and, therefore, the state's proof was insufficient.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings

by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996). This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id*.

The state can prove aggravated robbery by showing that the defendant intentionally or knowingly committed theft from the person of another by violence or putting the person in fear, and that such theft was accomplished with a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1).

In this case, the only issue relating to sufficiency of the evidence is identity. The identity of the perpetrator is a question of fact for the jury. State v. Vaughn, 29 S.W.3d 33, 40 (Tenn. Crim. App. 1998). The defendant and the victim testified that they were familiar with each other. The victim identified the defendant as the man who entered his family's business, threatened him with a gun, struck him on the head with the gun and robbed him. Further, despite the defendant's claim that the proof he presented at trial established an irrefutable alibi, it is well within the province of the jury to reject an alibi. State v. Underwood, 669 S.W.2d 700,703 (Tenn. Crim. App. 1984). The time of the robbery was never precisely established. Thus, even if the jury concluded the defendant made a mall purchase at 8:48 p.m., the jury could have reasonably found from the proof presented that the defendant had sufficient time to commit the robbery and arrive at the mall in time to make this purchase. This issue is without merit.

## II. Excited Utterance Exception to the Hearsay Rule

The defendant claims the trial court erred in ruling that the victim's statements to his mother regarding the robbery and the identity of the defendant were admissible pursuant to Tenn. R. Evid. 803(2) as excited utterances. Three requirements must be met before a statement will qualify as an excited utterance: first, there must be a startling event or condition; second, the statement must relate to the startling event or condition; and third, the declarant must still be under the stress of excitement from the event or condition when the statement is made. State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997); State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993).

These three requirements were satisfied with regard to the statements made by the victim to his mother when she arrived at the arcade shortly after the robbery. The robbery was certainly a startling event; the statements of Ladd related to the robbery; and the statements were made shortly after the robbery while Ladd was upset. This issue is without merit.

### III. Lesser-Included Offenses

The defendant argues the trial court erred in failing to charge the jury as to robbery and theft as lesser-included offenses of aggravated robbery. We respectfully disagree.

Since all of the statutory elements of theft and robbery are included within the statutory elements of aggravated robbery, they are lesser-included offenses of aggravated robbery under part (a) of State v. Burns, 6 S.W.3d 453, 466 (Tenn. 1999). Aggravated robbery is distinguished from robbery only by an additional showing that the robbery was accomplished with a deadly weapon or, in the alternative, by a showing that the victim suffered serious bodily injury. *See* Tenn. Code Ann. § 39-13-402. Robbery is distinguished from theft only by an additional showing that the theft was accomplished by violence or by putting the victim in fear. *See* Tenn. Code Ann. § 39-13-401(a). Thus, robbery and theft are lesser-included offenses of aggravated robbery under part (a) of Burns since all statutory elements of robbery and theft are also statutory elements of aggravated robbery.

However, our analysis does not stop there. As recently stated by the Tennessee Supreme Court in State v. Ely, ___ S.W.3d ___, ___, 2001 WL 605097, at *9 (Tenn. 2001), determination of whether a charge should be included in jury instructions as a lesser-included offense is a two-part inquiry. First, it must be determined if the offense meets the definition of a lesser-included offense as described in Burns. *Id.* Second, the charge must be justified by the evidence. *Id*; Burns, 6 S.W.3d at 467. This second step requires that we determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469. Therefore, we must determine whether, under the facts of this case, the trial court should have instructed the jury as to robbery and theft.

Of crucial significance is the interpretation of whether "any evidence exists that reasonable minds could accept as to the lesser-included offense." *Id.* After Burns, our supreme court has found error on several occasions relating to the failure to charge lesser offenses. State v. Swindle, 30 S.W.3d 289, 293-94 (Tenn. 2000) (finding harmless error in the failure to charge Class B misdemeanor assault as a lesser offense of aggravated sexual battery); State v. Bowles, ___ S.W.3d ___, ___, 2001 WL 856575, at *7 (Tenn. 2001) (finding reversible error in the failure to charge theft as a lesser offense of robbery); Ely, ___ S.W.3d at ___, 2001 WL 305097, at *12 (finding reversible error in the failure to charge second degree murder, reckless homicide and criminally negligent homicide as lesser offenses of felony murder); State v. Rush, ___ S.W.3d ___, ___, 2001 WL 334297, at *6 (Tenn. 2001, corrected opinion filed July 25, 2001) (finding reversible error in the failure to charge misdemeanor reckless endangerment as a lesser offense of attempted second degree murder).

In Ely the defendant was charged with felony murder relating to his actions of "repeatedly striking the victim over the head with a brick, or assisting [the] co-defendant as he did so." Ely, ___ S.W.3d at ___, 2001 WL 305097, at *12. The court concluded these facts "constituted *at least*

criminally negligent homicide, reckless homicide, or second degree murder." *Id.* (emphasis in original). At issue then is whether it is **always** error if the evidence "at least" establishes commission of a lesser-included offense.

Because the statutory elements of robbery and theft are included in the statutory elements of aggravated robbery, one cannot commit an aggravated robbery without also committing a robbery and theft. Similarly, one cannot commit a premeditated first degree murder without also committing a simple assault. The "at least" language in Ely could be literally interpreted to mean that because all statutory elements of a lesser-included offense are included in the greater offense under part (a) of Burns, (1) there will **always** be evidence that reasonable minds could accept to *at least* prove the lesser offense, and (2) the evidence will **always** be legally sufficient to *at least* support a conviction for the lesser offense. Thus, it is arguable that Ely means it would **always** be error to fail to charge any lesser-included offense that qualifies under part (a) of Burns. It could also be argued that such an error could never be harmless unless at least one higher, lesser-included offense was charged and rejected by the jury. *See* Ely, ___ S. W. 3d at ___, 2001 WL 305097, at *12-14; State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998).

Most recently, our supreme court concluded that the failure to charge theft as a lesser-included offense of robbery was reversible error. Bowles, ___ S.W.3d at ___, 2001 WL 856575, at *7. The court stated that "[i]n proving robbery, . . . the state also proved theft, for all elements of theft are included within the elements of robbery." *Id.* The court further emphasized that

> "[i]t is not necessary that Bowles demonstrate a rational basis for acquittal on the robbery charge before theft could be submitted to the jury as a lesser-included offense; he merely must demonstrate that evidence also exists which rational minds could accept as to the offense of theft."

*Id.* At issue then is whether this language means that "reasonable minds" could **always** find guilt of the lesser-included offense simply because the evidence is "legally sufficient" to support a conviction for the lesser-included offense. If so, the first prong of the Burns analysis is meaningless. We do not believe our supreme court intended such a result.

An illustration supports our interpretation of these supreme court cases. Let us assume it is undisputed at a trial that an elderly victim was brutally murdered and robbed in her home. The only disputed issue is whether the defendant was the perpetrator. The defendant advanced an alibi defense. If the trial court charged first degree murder and second degree murder, and the defendant was convicted of second degree murder, is it reversible error for the trial court to refuse to charge criminally negligent homicide or simple assault? We do not interpret the supreme court cases to require such a result since, under the facts, "reasonable minds" could not find guilt of such offenses. Likewise, the same analogy could apply to theft in an aggravated robbery case depending upon the evidence at trial.

In summary, we do not believe this precise issue has been decided by our supreme court. Thus, we conclude a lesser-included offense need not always be charged simply because one cannot commit the greater offense without also committing the lesser-included offense. The determination must be based upon the evidence introduced at trial, and each case is fact specific.

After Burns, but prior to Ely, Rush and Bowles, a panel of this court stated the following:

> The question then becomes whether, in determining if there is evidence that reasonable minds could accept as to the lesser-included offense, the trial court must find that there is proof of the lesser-included offense solely because it is a portion of the evidence supporting the existence of the greater offense, as opposed to the evidence of the lesser offense being an alternative explanation for what occurred. Upon review of relevant authorities, we hold that the trial court is not obliged to give the lesser-included offense instruction where there is no evidence of the lesser offense *other than* the very same evidence which supports the greater offense, that is, "that reasonable minds could accept as to the lesser-included offense." Burns, 6 S.W.3d at 469.

State v. Lewis, 36 S.W.3d 88, 100 (Tenn. Crim. App. 2000). Permission to appeal was denied in Lewis by our supreme court on October 30, 2000.

Although some of the language used in Lewis may be questionable in light of Ely, Rush and Bowles, we believe the basic premise of Lewis remains viable: (1) If the evidence at trial undisputedly shows that the greater offense was committed; (2) if the evidence of the lesser-included offense exists solely because it is included within the greater offense; and (3) if reasonable minds could not accept the lesser-included offense, it is not error to refuse to charge the lesser-included offense.

In the case before us, the victim testified that the man who robbed him displayed a gun and struck him on the head with it before taking the money. The fact that he had a head injury was undisputed. Contrary to defendant's argument, none of the proof submitted at trial could have provided a reasonable basis for a jury finding that there was no robbery with a deadly weapon.[1] The only proof in conflict with the victim's testimony, which was the testimony of the defendant, went

---

[1]During a discussion of the proposed jury charge, defense counsel clearly requested charges on robbery and theft. The trial court stated, "[i]t's not a credibility issue in my mind. It was either an aggravated robbery or they had the wrong person." Defense counsel responded, "[w]ell, and I'm pretty much in agreeance (sic) with your Honor. It's either – my guess is it's an all or nothing thing in this type of trial, but I have been caught before." Although counsel insisted on the lesser charges, no theory was advanced contrary to the trial court's observation that it was either an armed robbery or "they had the wrong person."

to the issue of the identity of the perpetrator, not whether there was a robbery with a deadly weapon. We conclude that reasonable minds could not accept the evidence as establishing simple robbery or theft, and the trial court did not err in failing to charge them.

In the event we have misinterpreted our supreme court cases and it was error not to charge robbery and theft, we conclude that the failure to do so was harmless beyond a reasonable doubt. Our supreme court has applied the harmless error doctrine in situations where the jury was instructed on at least one higher lesser-included offense and the jury, nevertheless, convicted on the greater offense. Williams, 977 S.W.2d at 105. Such harmless error must be established beyond a reasonable doubt. Ely, ___ S.W.3d at ___, 2001 WL 605097, at *14. We note, however, our supreme court has been reluctant to apply the harmless error doctrine where the jury was given no option to convict on a lesser-included offense. *See* Bowles, ___ S.W.3d at ___, 2001 WL 856575, at *7. Furthermore, the doctrine has not yet been applied in a case in which no lesser-included offenses were charged.

Nevertheless, we do not read Williams, Ely, or Bowles to absolutely preclude harmless error in all cases where no lesser-included offenses were charged. Again, each case is fact specific. Under the evidence presented at this trial, we conclude that the state has shown beyond a reasonable doubt that the jury would not have convicted the defendant of simple robbery or theft had they been charged.

This issue is without merit.

## IV.  Sentencing

The sentence range for a Range I standard offender for aggravated robbery, a Class B felony, is eight to twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2). The defendant challenges his sentence of eight years and six months, arguing the trial court erroneously relied upon a previous criminal conviction in establishing the length of his sentence. The defendant had a prior conviction for Class A misdemeanor possession of cocaine.

The trial court reviewed the statutory list of enhancement factors and found that factor one (previous history of criminal convictions or behavior ) was the only applicable enhancement factor. *See* Tenn. Code Ann. § 40-35-114(1). The court found the defendant had prior physical injuries from an accident and applied it as a mitigating factor, but found the mitigator was not as strong as the enhancing factor. The trial court imposed a sentence of eight years and six months.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986).

The sentence of eight years and six months imposed upon the defendant, only six months above the minimum, is adequately supported by the record and is in conformity with the purposes and principles of the sentencing act. Therefore, we decline to disturb the sentence imposed by the trial court.

## CONCLUSION

Based upon our examination of the record, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE