IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2009

## STATE OF TENNESSEE v. TAURUS MERRIWEATHER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-06981     James M. Lammey, Jr., Judge**

---

**No. W2008-00576-CCA-R3-CD  - Filed July 14, 2009**

---

The Defendant-Appellant, Taurus Merriweather ("Merriweather"), was convicted by a Shelby County Criminal Court jury of second degree murder and was subsequently sentenced to twenty-five years in confinement.  Merriweather's sole issue on appeal is whether the evidence was sufficient to establish his identity as the shooter in this case.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which  ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Robert W. Jones, District Public Defender; Garland Erguden, Assistant Public Defender (on appeal); William Robilio and Terrance Tatum, Assistant Public Defenders (at trial), Memphis, Tennessee, for the defendant-appellant, Taurus Merriweather.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; Betsy Carnesale and Muriel Malone, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

On October 4, 2005, Merriweather was indicted by the Shelby County Grand Jury and charged with first degree murder.  The victim, Sylvester Anderson, was shot multiple times and later died after being transported to the hospital.  The jury convicted Merriweather of second degree murder and he was later sentenced to twenty-five years in the Tennessee Department of Correction.

**State's Proof**.  Vivian Crawford, the victim's older sister, testified that she witnessed a fight between Merriweather and the victim outside of a store about a month prior to the victim's death. She observed Merriweather retrieve a stick that was "made like a bat" from the trunk of his car, approach the victim, and swing at him.  Crawford explained that she yelled to the victim to "look

out" and the victim ducked. Merriweather and the victim then began fighting until someone stopped the fight. After the fight, Merriweather entered a vehicle with the person who stopped the fight and drove away. Crawford stated that she did not know why they were fighting.

On cross-examination, Crawford testified that she had seen Merriweather around the store in the past but did not know his name until her husband told her on the day of the fight. Crawford stated that she did not hear what was said between the victim and Merriweather while they were fighting or talk to the victim regarding the fight. She also never called the police regarding the incident. Crawford acknowledged that the first time that she spoke with anyone regarding the fight was at the instant trial. Crawford could not recall the type of vehicle Merriweather entered after the fight, but she was able to remember that the vehicle was red.

During redirect examination, Crawford explained why she had not told anyone about the fight at the store between Merriweather and the victim. Crawford stated, "it didn't come to my mind, and I didn't think no more about it. . . . I thought he had probably . . . straightened it up." When she saw the police at the hospital the night her brother was shot, she did not think to tell them about the previous fight at the store at that time. She also stated that the police never questioned her about the shooting.

Vera Brooks, the victim's girlfriend, testified that the victim was at her apartment located at 377 McLemore during the late hours of May 14, 2005, and the early morning hours of May 15, 2005. While standing on the walkway area of the apartments, Merriweather, a person whom Brooks knew as "T-Mac," walked up to the victim with a baseball bat and asked the victim for seven dollars. Brooks intervened and told Merriweather, "I paid you that seven dollars," and Merriweather responded, "I didn't get it." Brooks then told the victim to go inside the apartment. Brooks stated that the victim went inside and locked the door. Approximately ten to fifteen minutes later, the victim stated that he was going back outside because he was not afraid. While the victim was standing outside, Brooks noticed "a little gray car" in the area which she had recognized as being associated with Merriweather. After Brooks noticed the gray car, she noticed that her neighbor's outside light, which was about two apartment doors down from Brooks' apartment, was not on. She stated that the light was on before the gray car arrived in the area. Brooks then heard a voice stating, "now, what [are] you going to do[?]" The sound of a gunshot then followed. Brooks stated, that after the victim turned to enter the apartment, Merriweather shot the victim a second time. The victim then collapsed in front of the apartment door. As Merriweather was walking away from the scene, Merriweather shot the victim a third time. Brooks stated that the only thing the victim said after he was shot was, "baby, it hurts." Brooks was only able to describe the gun used by Merriweather to shoot the victim as being silver and "kind of big." Later, Brooks gave a statement to the police and identified Merriweather in a photographic line-up as the person who shot the victim. Brooks also identified Merriweather as the perpetrator at trial.

Aaron Austin testified that he was inside Brooks' apartment at the time of the shooting. Austin stated that he heard three gunshots while he was lying in bed watching television. He then ran outside and found the victim lying on the ground stating, "He shot me. He shot me. He shot me." Prior to the shooting, Austin heard Merriweather and the victim arguing, but he did not know what the argument was about. He knew that Merriweather and the victim were the individuals who

were arguing because he looked out the window and observed them. Austin also noticed that Merriweather had an object in his hand that resembled a bat. On cross-examination, Austin testified that he heard the gunshots within a couple of minutes of looking out the window and observing Merriweather and the victim arguing. On redirect examination, Austin stated that he did not know what the argument was about, but he did hear someone say the word "money."

Langdon Hubbert, a patrol officer with the Memphis Police Department, testified that at approximately 12:00 a.m. on May 15, 2005, he responded to a homicide call at 377 East McLemore. When he and his partner arrived at the scene, they found the victim lying on the ground, and grabbing his chest. Officer Hubbert asked the victim if he knew who had shot him. The victim stated that "T-Mac" had shot him. Officer Hubbert testified that the victim had been shot in the chest, his right wrist, and his right ankle. Brooks also informed Officer Hubbert that "T-Mac" was the person who shot the victim. Officer Hubbert stated that Brooks identified "T-Mac" as Taurus Merriweather.

Chastity Ragland, another patrol officer with the Memphis Police Department, testified that she also responded to the shooting call at 377 East McLemore. Officer Ragland's testimony describing the scene was substantially the same as Officer Hubbert's testimony, except she was unable to obtain a statement from the victim as to who shot him. Officer Ragland stated that Brooks told her that Merriweather was the person who shot her boyfriend. Officer Ragland knew Merriweather by the name of "T-Mac" from a prior encounter with him.

Lieutenant Mark Rewalt, formerly a sergeant with the homicide bureau of the Memphis Police Department, testified that Brooks was shown a photographic line-up to identify the shooter. He stated that Brooks immediately identified Merriweather as the person who shot her boyfriend. On cross-examination, Lieutenant Rewalt acknowledged that Brooks was the only person who positively identified Merriweather as the shooter.

Sergeant Anthony Mullins, the homicide case coordinator with the Memphis Police Department, testified that in his efforts to locate Merriweather he learned that Merriweather was scheduled to appear in court the next day, May 16, 2005. He stated that he sent two investigators to court to locate Merriweather, but Merriweather never appeared. Merriweather was later arrested after he turned himself in to the fugitive office on June 5, 2005. On cross-examination, Sergeant Mullins testified that he was unaware of any dying declaration made by the victim indicating that Merriweather was the person who shot him. He stated that he would have put that information in the affidavit of complaint for Merriweather's arrest warrant.

Dr. Karen Chancellor, chief medical examiner for Shelby County, testified that she did not perform the autopsy of the victim, but she reviewed the report. Dr. Chancellor stated that the victim had a gunshot entrance wound to his chest and a exit wound to his back which damaged his lungs and a major blood vessel. There were also gunshot wound injuries behind the victim's left knee, on his right wrist, and on his right foot. The wound behind the left knee fractured the tibia and damaged a major blood vessel. Dr. Chancellor stated that the wounds to the victim's chest and left knee would have resulted in the victim's death due to extensive blood loss.

Demar Wells, a crime scene investigator with the Memphis Police Department, testified that he took photographs of the crime scene and collected evidence. Officer Wells collected bloody white towels, a bloody sock, a bloody red t-shirt, a white bloody jersey, a bloody bullet fragment, two spent nine millimeter luger casings, a blue head rag, a pair of green jogging pants, a pair of black jogging pants with white stripes, and a pair of black tennis shoes.

**Defense's Proof.** Merriweather testified that he was not known as and had never been referred to as "T-Mac", but some people did refer to him as "Red" or "Slim." He stated that around eight or nine o'clock in the evening on Saturday, May 14, 2005, his father drove him to his cousin's house. Merriweather explained that his car had been impounded by the police after he had been arrested for driving under the influence. While at his cousin's house, he "popp[ed] a couple of pills, . . . smok[ed] some weed," "drank," and then "passed out" about fifteen or twenty minutes later. He stated, "The next thing I kn[e]w, I [woke] back up at home with my girlfriend," on Sunday morning around nine or ten o'clock. He learned of the victim's death from his girlfriend. Merriweather stated that he lived on McLemore in 2003 or 2004 and that he knew Brooks, Austin, and the victim as "just neighbors downstairs." Merriweather stated that he did not borrow or loan any money to the victim. He acknowledged that in May of 2005 his hair was long, but he cut it after he had turned himself in to police because he did not have anybody to braid his hair while in jail. He learned that he was wanted for murder on May 16, 2005, but he did not call the police because he was "in a panic." On cross-examination, Merriweather testified that on May 16, 2005, he did not appear in court regarding his arrest for driving under the influence because he forgot about the hearing. He also stated that he did not go to work on that day because he was "too messed up."

George Carr testified that he lived in the same apartment building as Brooks and was four apartment doors down from her unit. Carr stated that around dusk on May 14, 2005, he and his wife were sitting on their porch when they observed a man with a baseball bat "beating" on Brooks' door. Carr described the man as five feet six inches to five feet seven inches tall, weighing about 115 to 125 pounds. The man also had long dreadlocks and "real dark" skin, but Carr did not recall what the man was wearing. Carr stated that the man walked through an alley when no one answered the door. Carr then went inside his apartment to go to the bathroom. When he returned outside, Carr's wife informed him that the victim had been shot. From the time Carr saw the man with a bat knocking on Brooks' door until the time Carr went to the bathroom, about four to five minutes had passed. Another three to four minutes had passed from the time he entered the bathroom until the time his wife informed him of the shooting. Carr stated that he was acquainted with Merriweather through Merriweather's mother and that Merriweather was not the person he saw knocking on Brooks' door with a baseball bat. Carr stated that Merriweather had short hair and that Merriweather's hair had been about the same length since he has known him.

On cross-examination, Carr testified that he saw a person whom he had never seen before running toward Simpson Street while he was returning to his porch. Carr stated that he was friends with Merriweather's mother because his deceased wife was good friends with her. Carr's wife and Merriweather's mother had been employed by the same employer.

Teidre Sugars, Merriweather's sister, testified that she lived with Merriweather, Merriweather's girlfriend, and Merriweather's three children. She stated that Merriweather was

lying on the couch when she arrived home around 11:09 p.m. or 11:19 p.m. Merriweather's girlfriend informed her that he was drunk and had been "throwing up." Sugars then went to her room. Around nine or ten o'clock the next morning, Sugars saw Merriweather on the couch where she saw him the night before.

Bill Pounders, employed with Shelby County Central Information Technology, testified that he maintains data for the jail management computer system. When an inmate is processed in the jail, information regarding alternative names or aliases are obtained from the inmate and entered on his or her "R & I number" that is specifically assigned to the inmate. Pounders stated that he researched the jail database for inmates with an alias by the name of "T-Mac" and retrieved six records with variations of the name "T-Mac." Merriweather's "R & I number" did not match any of the records that had the name "T-Mac" or a variation of the name as an alias.

**State's Rebuttal Proof.** Sergeant Mullins testified that while searching "Visions," the database system where offense reports are entered, he found Merriweather's name and address which included the alias "T-Mac." Sergeant Mullins acknowledged that he could not determine the date when the alias was entered into "Visions." He stated that Merriweather was not associated with the alias "T-Mac" in the jail management database system.

## ANALYSIS

Merriweather argues that the evidence was insufficient for the jury to find him guilty of second degree murder beyond a reasonable doubt. Specifically, he contends that the proof of his identity as the shooter was insufficient because Vera Brooks and Aaron Austin were the only witnesses that placed him at the scene of the shooting. Further, Merriweather contends that the victim did not specifically name Merriweather as the shooter when the victim said, "He shot me. He shot me. He shot me." The State argues that the proof establishing Merriweather as the shooter was sufficient to support the conviction for second degree murder.

When a defendant challenges the sufficiency of the convicting evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

On appeal the State, on appeal, is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not re-weigh or re-evaluate the evidence. State v. Sutton, 166 S.W.3d 686, 689-90 (Tenn.

2005). The Tennessee Supreme Court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Merriweather was convicted of second degree murder. Tennessee Code Annotated section 39-13-210 (a)(1) defines second degree murder as "a knowing killing of another." In addition to the elements of second degree murder, the identity of the perpetrator, an essential element of any crime, must also be proven beyond a reasonable doubt. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). Issues regarding identity are questions of fact determined by the jury. State v. Vaughn, 29 S.W.3d 33, 40 (Tenn. Crim. App. 1998). Conflicts in witnesses' testimony regarding the identity of the accused and the weight given to those witnesses are issues resolved by the jury as the finder of fact. State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994).

Here, we conclude the evidence was sufficient to establish Merriweather's identity as the shooter in this case. Even though Merriweather contends that the victim did not specifically identify him as the shooter, the victim named "T-Mac" as the person who shot him. T-Mac was established at trial as an alias associated with Merriweather immediately after the shooting when he spoke to Officer Hubbert. Vera Brooks, the victim's girlfriend, testified that she was present at the scene when the victim was shot. Brooks identified Merriweather in a photographic line-up and at trial as the person who shot the victim multiples times in front of her apartment unit. Furthermore, Aaron Austin heard and observed an argument between Merriweather and the victim immediately prior to hearing gunshots. Although Merriweather presented evidence of an alibi through his own testimony and the testimony of Teidre Sugars, the jury chose to reject them (citing State v. Crawford, 635 S.W. 2d 704, 705 (Tenn. Crim. App. 1982)). Merriweather also presented testimony of George Carr, the neighbor who testified that he saw someone other than Merriweather running from the scene at the time of the shooting; however, the jury accredited the testimony of the State's witnesses identifying Merriweather as the shooter. As previously mentioned, this court does not re-weigh or re-evaluate the evidence. Sutton, 166 S.W.3d at 689-90. Viewing the evidence in the light most favorable to the State, the evidence was more than sufficient to allow the jury to find that Merriweather was the perpetrator who committed the crime of second degree murder. Accordingly, Merriweather is not entitled to relief.

## CONCLUSION

Based upon the foregoing review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE

-6-