# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 6, 2005 Session

## STATE OF TENNESSEE v. SHIRLEY A. RUDD

**Appeal from the Circuit Court for Obion County**
**No. 4-324     William B. Acree, Jr., Judge**

———————————

**No. W2005-01022-CCA-R3-CD  - Filed February 13, 2006**

———————————

The Defendant, Shirley A. Rudd, was convicted by an Obion County jury of sale of a controlled substance. On appeal, the Defendant asserts that: (1) the trial court erred when it did not declare a mistrial because two witnesses made improper and prejudicial statements about the Defendant's prior bad acts; (2) there was insufficient evidence to support her conviction; and (3) the trial court erred when it denied the Defendant's counsel the right to question a witness about her motive for testifying. Finding that there exists no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ALAN E. GLENN, JJ., joined.

James T. Powell, Union City, Tennessee, for the Appellant, Shirley A. Rudd.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's conviction for the sale of Oxycodone, a schedule II controlled substance. At trial, the following evidence was presented: Jimmy Wilson, an Officer with the Troy Police Department, testified that on August 20, 2004, the Troy Police Department was conducting an undercover drug operation. He stated that a confidential informant, Vanedda Dick, was employed in this operation. Officer Wilson testified that Dick had been used by the Troy Police Department on prior occasions and that she was compensated $50 for procuring drugs in misdemeanor cases and $100 in felony cases.

Officer Wilson stated that, on August 20, 2004, he and Troy Chief of Police James Cleek were contacted by Dick about a possible drug deal. Officer Wilson said that he and Chief Cleek met Dick behind the water tower at Central School. Next, Officer Wilson testified that they gave Dick $60 to purchase drugs and a small recording device to wear, which transmitted sound back to the officers as well as recorded the transaction. Officer Wilson then stated that Dick intended to travel to 207 Church Street to purchase Oxycontin from the Defendant. Officer Wilson conceded that he and Chief Cleek briefly lost sight of Dick when she turned onto Church Street, to park in front of the Defendant's home, but that she was constantly monitored via the recording device she wore. According to Officer Wilson, after a few minutes, Dick left the Defendant's residence, and he and Chief Cleek followed Dick back to the water tower, where she presented them with two eighty milligram tablets of Oxycontin. During Officer Wilson's testimony, the State played a tape that was made via the recording device taped to Dick. Officer Wilson stated that, although the recording was difficult to follow, the live feed that he and Chief Cleek recieved in the patrol car was more intelligible.

On cross-examination, Officer Wilson stated that he was not aware whether Dick derived income from any source other than her work as a police informant. He also stated that Dick had contacted the police on August 20, 2004, because she had set up a drug transaction with the Defendant. Officer Wilson conceded that the police did not search Dick prior to or after her transaction with the Defendant. With regard to the audio recording played by the State, Officer Wilson stated that Dick taped the recording device used to make the recording onto herself, right below her bra. Officer Wilson conceded that the excess noise on the tape could have been deliberately created by Dick rubbing on her chest.

Dick testified that, on August 20, 2004, she met Officer Wilson and Chief Cleek of the Troy Police Department regarding a drug transaction that she had arranged. She stated that she then went to the Defendant's home at 207 Church Street and purchased two tablets of Oxycontin for $30 each from the Defendant. She said that the money that she used to purchase the drugs was supplied by Officer Wilson and Chief Cleek and that after purchasing the drugs she turned them over to Officer Wilson and Chief Cleek. She also testified that during the transaction she wore a recording device. On cross-examination, Dick testified that she had approached the Troy Police Department about work as a confidential informant and that her motivation was to staunch the supply of drugs available to her within the community because she was a former user trying to stay off drugs.

Troy Chief of Police, James Cleek, also testified that Dick was constantly being monitored by the recording device taped to her chest and that the static and background noise on the tape of the drug transaction could not have been intentionally caused by Dick, although, he admitted that he could not identify the source of the static or postulate a reason for the poor sound quality on the tape. Based upon this evidence, the jury found the Defendant guilty of sale of a controlled substance. The trial court sentenced the Defendant to seven years to be served in the Tennessee Department of Correction.

## II. Analysis

On appeal, the Defendant asserts that: (1) the trial court erred when it did not declare a mistrial because Officer Wilson and Dick made improper and prejudicial statements about the Defendant's prior bad acts; (2) there was insufficient evidence to support her conviction; and (3) the trial court erred when it denied the Defendant's counsel the right to question Dick about her motive for testifying.

### A. Improper Statements Regarding Prior Bad Acts

The Defendant's first assertion is that the trial court erred when it did not declare a mistrial because Officer Wilson and Dick made improper and prejudicial statements about her prior bad acts when they testified. She argues that Officer Wilson's and Dick's testimony concerning prior bad acts was highly prejudicial and that the jury's hearing the testimony rendered a fair trial impossible. She also asserts that the trial court's curative instructions were not adequate to serve justice. The State concedes that the testimony in issue was inadmissible but contends that the trial court did not abuse its discretion by denying the Defendant's request for a mistrial because the trial court gave a curative instruction, and the State's case against the Defendant was strong.

The record reflects that the following exchange took place during direct examination of Officer Wilson, by the State:

> [State]: Now, give me an idea - - I'm going to go specifically to the August 20th date now - - how it all started. Who called [you] and where you met and kind of just what went on that day?
> [Officer Wilson]: Ms. Dick called us that morning, early that morning, and said she could buy again from [the Defendant] . . . .

At this point, counsel for the Defendant objected to Officer Wilson's testimony as hearsay, specifically taking exception to the use of the term "again." The trial court sustained the objection, but stated that it would not declare a mistrial based on the comment, instead providing the following a curative instruction to the jury:

> Ladies and gentlemen of the jury, a question was asked, and the officer began giving a response to it. There was an objection. The Court is going to sustain the objection. The conversation between Ms. Vanedda Dick and the officer is hearsay and it shall not be considered by you for any purpose whatsoever.

Later, during the direct examination of Dick, the following colloquy took place:

> [State]: Okay. Did you ask [Officer Wilson] for a specific amount of money, or did you tell him how much money you were going to need or - -
> [Dick]: Usually that's the way, yeah.

[State]: Okay. So how much money did you need on this particular occasion?
[Dick]: She usually got rid of them for $30 apiece.

Once again, the Defendant's counsel objected, stating that the reference to how much the Defendant "usually" sold the drugs for was extremely prejudicial. The trial court overruled the objection, and shortly thereafter the following testimony was given by Dick:

[State]: Okay. And so, what else did you do besides getting $60 from [Officer Wilson]?
[Dick]: Well, actually, the street price for them are $50, but she got rid of them for $30.

At this point, the Defendant's counsel objected for the third time. The trial court sustained the objection, but it again declined to grant a mistrial. After a short bench conference, the following curative instruction was given:

Ladies and gentlemen of the jury, Ms. Dick, the witness, is attempting to infer that Ms. Rudd may have been involved in some prior drug dealing. I am going to instruct you that Ms. Rudd is being tried for an alleged charge on August 20, 2004. There is no evidence whatsoever in this record that Ms. Rudd has ever been involved in any sale of drugs on any previous occasion in any form or fashion.

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only if there is a manifest necessity for such action. Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). A manifest necessity exists when "no feasible alternative to halting the proceedings" exists. State v. Knight, 616 S.W.2d 593, 596 (Tenn. Crim. App. 1981). The defendant bears the burden of establishing a manifest necessity. State v. Seay, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). This Court will not disturb that decision unless there is an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

Officer Wilson's and Dick's testimony regarding the Defendant's previous involvement in the sale of drugs was evidence of other crimes, wrongs, or prior bad acts and was not admissible to prove the character of a person in order to show action in conformity with the character trait. See Tenn. R. Evid. 404(b). When determining whether a mistrial is necessary after a witness had injected improper testimony, this Court has often considered the following factors: (1) whether the improper testimony resulted from questioning by the State or was it a gratuitous declaration; (2) the relative strength or weakness of the State's case; and (3) whether the trial court promptly gave a curative instruction. See State v. Paul Hayes, No. W2001-02637-CCA-R3-CD, 2002 WL 31746693, at *4 (Tenn. Crim. App., at Jackson, Dec. 6, 2002), *perm. app. denied* (Tenn. May 27, 2003).

In this case, the statements regarding prior bad acts were elicited during direct examination by the State. However, we cannot say that the record reflects that the State intentionally sought to elicit the testimony. In addition, the record shows the State presented relatively strong evidence of the Defendant's guilt. As for the last factor, we note that the trial court provided the jury with a thorough curative instruction, explaining that there was no evidence whatsoever in the record to indicate that the Defendant had ever engaged in the sale of drugs outside of the incident in question. Furthermore, it did so in a timely fashion following the Defendant's objection to the testimony. We believe that the trial court's curative instruction was sufficient to admonish the jury not to consider the inappropriate statement, and this Court must assume that the jury followed the trial court's instructions. State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987).

We conclude that the Defendant has failed to establish that the trial court abused its discretion when it determined that there did not exist a manifest necessity so as to warrant a mistrial and that the improper testimony did not render her trial unfair. The Defendant is not entitled to relief on this issue.

## B. Sufficiency of Evidence

The Defendant next contends that the evidence offered at trial is insufficient to support her Class C felony conviction for the sale of Oxycodone, a schedule II controlled substance, in violation of Tennessee Code Annotated section 39-17-417(a)(3) (2003). When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Leach, 148 S.W.3d 42, 53 (Tenn. 2004). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Vaughn, 29 S.W.3d 33, 39 (Tenn. Crim. App. 1999). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Davidson, 121 S.W.3d 600, 614 (Tenn. 2003). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant argues that the evidence is insufficient to support her conviction for sale of a controlled substance, citing the following factors: (1) Dick approached the police about providing her services as an informant; (2) Dick was compensated for the information she provided; (3) the compensation Dick received was her only source of income; (4) the audiotape of the transaction was unintelligible; (5) neither Dick nor her car were searched prior to the drug transaction; and (6) the officers momentarily lost sight of Dick before she entered the Defendant's home.

We begin by noting that the factors cited by the Defendant are uncontroverted. However, the jury was aware of this and chose to give less weight to these facts than to those facts that supported the State's case. When viewing the evidence presented at trial in the light most favorable to the State, we conclude that there is sufficient evidence to sustain the Defendant's conviction, therefore, the Defendant is not entitled to relief on this issue.

### C. Right to Cross-Examination

The Defendant's final assertion is that the trial court erred when it denied the Defendant's counsel the right to question Dick about her motive for testifying. Initially, we point out that the Defendant has failed to cite specific authority to support her claim. Where the defendant omits references to legal precedent, an issue may be deemed waived. Tenn. R. App. P. 27(a); Tenn. R. Crim. P. 10(b); State v. Chance, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989). Nonetheless, cross-examination is a fundamental right. See e.g., State v. Hill, 598 S.W.2d 815 (Tenn. Crim. App. 1980). There are many reported cases on the subject. Thus, we have chosen to address the merits of the Defendant's assertions.

The gravamen of the complaint is that the trial court improperly limited defense counsel's attempt to impeach Dick's credibility and her testimony. Generally speaking, a denial of the right to an effective cross-examination is "constitutional error of the first magnitude and amounts to a violation of the basic right to a fair trial." State v. Hill, 598 S.W.2d at 819. The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the discretion of the trial court. State v. Reid, 164 S.W.3d 286, 348 (Tenn. 2005) Appellate courts may not disturb limits on cross-examination except when there has been an unreasonable restriction on the right. State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995).

In the case at hand, defense counsel brought up his intent to question Dick about her failure to appear in court in a different case a week prior to the Defendant's trial, with the intention of showing the jury that Dick was only testifying to avoid being held in contempt and that Dick did not want to be in court because she was not telling the truth. The State objected, stating that the information the Defendant was attempting to elicit was irrelevant. The trial court agreed and sustained the objection. We conclude that this ruling was within the sound discretion of the trial court. Nothing in the record suggests that the Defendant was unduly prejudiced by this ruling, and we do not believe the ruling was an unreasonable restriction on her right to cross-examination. Thus, the Defendant is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing, we conclude that the trial court did not commit reversible error. Therefore, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE